JUDGE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR20-032-JCC |
| Plaintiff, | |
| v. | DEFENDANT'S SENTENCING MEMORANDUM |
| CAMERON SHEA, | |
| Defendant. | |

Cameron Shea, through counsel, respectfully offers the following memorandum in support of the United States Probation Office's recommendation of a time-served sentence.

## I.   BACKGROUND

Cameron Shea was a vibrant, inquisitive, friendly child, but the wheels fell off as he approached adolescence. Beginning at about age ten, Mr. Shea endured bullying at home and at school. After leaving his parents' home at age 15, Mr. Shea struggled with major depressive disorder, leading to several attempts at self harm and repeated hospitalizations. Though undeniably smart, Mr. Shea could not complete school. Then he began abusing drugs. For five years before his arrest, Mr. Shea used opiates daily. He was high when he wrote virtually every message attributed to him in discovery.

Mr. Shea has been intermittently homeless for the last decade, though he has always maintained employment. His best period, two years of relative stability, ended

DEFENDANT'S SENTENCING MEMORANDUM
(*United States v. Shea*, No. CR20-032-JCC) - 1

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

when Mr. Shea turned 21 years old, lost his housing and access to education, and ended up as the victim in an abusive relationship. His next relationship, with a single mother whose young child he began to see as his own, ended traumatically just before he committed this crime.

Mr. Shea careened into adulthood, throwing himself into a series of causes, from union activism to veganism to campaigning for Bernie Sanders. When he discovered Atomwaffen, Mr. Shea was living in his car in the parking lot of the Fred Meyer store where he worked. To Mr. Shea, then unmedicated, isolated, and drug addicted, Atomwaffen's message that people are inherently tribal, selfish, and violent made sense. Even working full time, it seemed plain that he would never earn enough money to pursue an education or achieve stable housing. It was easy to believe that civilization is doomed to collapse. And, as Mr. Shea expresses in his letter, anger felt better than despair.

Though Mr. Shea hid his involvement in white supremacy from his family and coworkers, it began to occupy an important part of his life. On the internet, he was a stronger presence than his limited means permitted him to be in the real world. And online, he found a community of people from across the country who appreciated and encouraged that personality. For that reason, when the media exposed his friend to harassment, Mr. Shea believed he had to respond. Atomwaffen being what it is, Mr. Shea's defense of his friend was racist and threatening.

Mr. Shea has written to the Court, and thereby to his victims, to express his regret. Though the last 18 months have been unimaginably difficult, some good has come of it. For the first time in many years, Mr. Shea is both drug free and receiving medication. Through the worst parts of the pandemic lockdown, he found solidarity with other inmates of diverse backgrounds. Mr. Shea's letter shows that he has thought about himself and his conduct. Most importantly, Mr. Shea has restored his

DEFENDANT'S SENTENCING
MEMORANDUM
(*United States v. Shea*, No. CR20-032-JCC) - 2

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

relationships with his family. As their letters reflect, they are committed to him and horrified by his conduct. By offering love and support within appropriate limits, Mr. Shea's family will be key to his reentry.

## II.      SENTENCING REQUEST UNDER 18 U.S.C. § 3553(A)

Mr. Shea's victims should know that a time-served sentence is still an enormous punishment. When he appears before the Court, Mr. Shea will have been in custody for 18 months—the equivalent of a 22-month sentence (assuming the usual good-time reduction and no transitional housing). Mr. Shea has served those 18 months under historically arduous conditions. He spent nearly a year in lockdown, trapped in a cell with a single cellmate and virtually no access to the sun. When Mr. Shea contracted COVID-19 over Christmas 2020, he truly believed he would die, but he could not communicate with family, even by phone. And, of course, the intermittent publicity of Mr. Shea's arrest has meant that some prisoners will see him as either a target or an ally, no matter how carefully Mr. Shea tries to avoid prison's racial politics. Imprisonment has been a life-changing ordeal, made all the more difficult because Mr. Shea has never before been arrested or accused of any crime.

But the truth is that Mr. Shea will not realize the full impact of this prosecution until after his release. Because federal convictions cannot be expunged, Mr. Shea will experience the consequences of his crime for the rest of his life. Few employers will overlook a federal hate-crime conviction, regardless of Mr. Shea's rehabilitation or his earnest explanations that he committed these crimes as a meaningfully impaired young man. And the social costs likewise will be substantial. The decision to publicize this case means that, for the foreseeable future, any person who googles Mr. Shea's name will learn of his crime. Mr. Shea accepts that his conduct merits these life-long disabilities, but surely no one would dispute that they represent significant punishment.

DEFENDANT'S SENTENCING MEMORANDUM
(*United States v. Shea*, No. CR20-032-JCC) - 3

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

Furthermore, as the probation officer notes, a time-served sentence avoids unwarranted sentencing disparity with Mr. Shea's convicted co-defendants, who received 16-month and probationary sentences respectively. Though Mr. Shea acknowledges his greater involvement—creating the Operation Erste Säule chat group, for example, and assisting in the distribution of the posters—counsel hopes the Court will note that Mr. Shea's criminal conduct was similar in many respects to his codefendants. Like them, Mr. Shea mailed obliquely threatening posters to a victim. Mr. Shea did not create the posters, recruit his codefendants to Atomwaffen, choose his codefendants' targets, or direct the manner that they delivered their posters. Mr. Shea may deserve—and certainly has already served—a harder sentence than his codefendants, but a sentence longer than time-served is unwarranted.

Last, a time-served sentence promotes respect for the law and promotes rehabilitation. By treating Mr. Shea compassionately, the Court can interrupt the cynical view of human nature that attracted Mr. Shea and others to Atomwaffen's apocalyptic vision. Supervision, coupled with specialized counseling like Moral Reconation Therapy, will deter Mr. Shea from future misconduct and encourage him to build on the remorse he clearly expresses in his letter to the Court. Prison, by contrast, will do the opposite, potentially forcing Mr. Shea to express a racial identity, if only for self-protection.

### III. CONCLUSION

As a very young man, and in a time of emotional and financial instability, Mr. Shea committed and abetted serious crimes that terrorized people more than he foresaw. He is remorseful and paid a heavy price. Though Mr. Shea will never escape the shadow of this crime, he asks the Court to permit him to begin that work now.

//

//

DEFENDANT'S SENTENCING MEMORANDUM
(*United States v. Shea*, No. CR20-032-JCC) - 4

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

Dr. Cornell West has observed that "Justice is what love looks like in public." Here, a time-served sentence is just.

DATED this 17th day of August 2021.

Respectfully submitted,

s/ *Gregory T. Murphy*
Assistant Federal Public Defender
Attorney for Mr. Cameron Shea

DEFENDANT'S SENTENCING MEMORANDUM
(*United States v. Shea*, No. CR20-032-JCC) - 5

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100